UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAMON LOVELL CALDWELL,

        Plaintiff,                     Case No. 1:24-cv-11178

v.                                           Honorable Thomas L. Ludington
                                                  United States District Judge
PAUL SCHREIBER, et al.

        Defendants.
_____/

**OPINION AND ORDER DISMISSING PLAINTIFF'S *PRO SE* COMPLAINT AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

*Pro se* Plaintiff Ramon Caldwell alleges various staff members at the Woodland Center Correctional Facility in Whitmore Lake, Michigan, deprived him of his First Amendment rights in violation of 42 U.S.C. § 1983. Because Plaintiff proceeds *in forma pauperis*, his Complaint is subject to screening under the Prisoner Litigation Reform Act. Plaintiff's Complaint does not survive this screening. All Defendants are entitled to Eleventh Amendment sovereign immunity in their official capacities, and Plaintiff does not plead any viable individual capacity claims. So Plaintiff's Complaint will be dismissed and, because no appeal can be taken in good faith, his ability to proceed *in forma pauperis* on appeal will be denied.

I.

In 2008, Plaintiff Ramon Lovell Caldwell was sentenced in state court to a minimum of 15 years of imprisonment after pleading nolo contendere to second-degree murder, MICH. COMP. LAWS § 750.317, and felony-firearm, MICH. COMP. LAWS § 750.227b. *See Offender Search*, MICH. DEP'T OF CORR, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=686874 (last visited May 13, 2025). On May 2, 2024, Plaintiff—while confined at the Woodland

Center Correctional Facility (WCC)[1] in Whitmore Lake, Michigan—filed a *pro se* Complaint against four WCC staff members: (1) Defendant Paul Schreiber, the WCC Warden; (2) "Defendant Ryan," a WCC mailroom clerk; (3) "Defendant Mikat," the WCC Grievance Coordinator; and (4) "Defendant Moriarty," the WCC Facility Manager. ECF No. 1.

Plaintiff generally alleges that, in January, February, and September 2023, he received documents from the IRS after WCC staff opened them and redacted Plaintiff's social security and taxpayer identification numbers. *See id.* at PageID.2–3. Notably, the first IRS document attached to Plaintiff's Complaint—issued on January 9, 2023—reflects that the IRS "found an error" on his 2020 Form 1040 such that he would receive a $641.02 refund within 4-6 weeks. *Id.* at PageID.10. The second IRS document—issued on February 13, 2023—informed Plaintiff that the IRS was holding his 2020 refund "until [it] finish[ed] verifying the accuracy of [his] return." *Id.* at PageID.16. The remaining IRS documents are boiler-plate responses to earlier, unclear, correspondences. *See id.* at PageID.17–24. But Plaintiff contends that all IRS documents were "legal mail," so Defendants deprived him of his First Amendment rights by opening and redacting them. *Id.* at PageID.3–4.

In September 2023, Plaintiff wrote to Defendant Ryan alleging WCC officials opened his IRS documents without him being present and "blacked out valuable information." *Id.* at PageID.25. Defendant Ryan responded by explaining that Plaintiff's personal information was "blacked out" per MDOC policy that prisoners "are prohibited from having access to . . . social

---

[1] WCC "presently houses" the Michigan Department of Correction's "Inpatient Mental Health and Crisis Stabilization Program." *Woodland Center Correctional Facility (WCC)*, MICH. DEP'T OF CORR., https://www.michigan.gov/corrections/prisons/woodland-center-correctional-facility (last visited May 13, 2025).This "is a referral based program for prisoners experiencing a serious mental health crisis" intended to "diagnose, treat and stabilize the prisoners" through "[i]ndividualized treatment plans[.]" *Id.*

security numbers . . . unless . . . approved by the Warden." *Id.* at PageID.26. So Plaintiff filed a Step I grievance in October 2023. *Id.* at PageID.28–29. But Defendants denied this grievance. *Id.* at PageID.29. So Plaintiff appealed. *Id.* at PageID.30. But Defendants denied his appeal—or Step II Grievance—noting that the IRS documents were "not legal mail." *Id.* at PageID.32. Plaintiff appealed again, filing a Step III Grievance, but such Grievance was denied in November 2023 because the Michigan Department of Corrections concluded that "a proper decision was rendered." ECF No. 1 at PageID.31.

So Plaintiff turned to federal court. In his *pro se* Complaint, Plaintiff seeks $150,000 in compensatory damages from each of the four Defendants, as well as $50,000 in punitive damages from each Defendant. *Id.* at PageID.6. Plaintiff also seeks injunctive and declaratory relief. *Id.* In May 2024, Magistrate Judge David Grand granted Plaintiff's application to proceed *in forma pauperis* (IFP). ECF No. 7, *see also* ECF No. 10 (amending to correct the filing fee).

## II.

By proceeding IFP, Plaintiff's Complaint is subject to Prison Litigation Reform Act (PLRA) screening.[2] The PLRA provides that courts should dismiss an IFP complaint before service if the complaint is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B).

---

[2] By enacting the federal IFP statute, "Congress 'intended to guarantee that no citizen shall be denied an opportunity to commence . . . an action . . . in any court of the United States, solely because . . . poverty makes it impossible . . . to pay or secure the costs' of litigation." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). But with increased access comes an increased need for screening, because "[a]t the same time . . . Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous . . . lawsuits.'" *Id*. (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

A complaint is frivolous if it lacks any arguable basis in law or fact. *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). And a complaint fails to state a claim if, even when construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), it does not include "a short and plain statement of the claim" showing entitlement to relief and "a demand for the relief sought[.]" *See* FED. R. CIV. P. 8. Bare "labels and conclusions" or "naked assertions" are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 679 (2007). Instead, the complaint must include sufficient factual allegations to push its claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III.

As explained below, Plaintiff's *pro se* Complaint does not survive PLRA screening.

#### A. Eleventh Amendment State Sovereign Immunity

As a threshold issue, Plaintiff does not identify whether all Defendants are sued in their individual capacity, official capacity, or both. *See* ECF No. 1. To the extent Plaintiff sues Defendants in their official capacities, the Eleventh Amendment bars his claims.

The Eleventh Amendment "deprives federal courts of subject-matter jurisdiction" when a private plaintiff sues a state, or a state employee in their official capacity. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (noting a suit against a state employee in their official capacity is a "suit against the [s]tate itself"); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Indeed, Eleventh Amendment sovereign immunity is a "true jurisdictional bar" to suit and accordingly "must be decided before the merits." *Russell*, 784 F.3d at 1046; *accord Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018); *Ladd v. Marchbanks*, 971 F.3d 574, 577 (6th Cir. 2020). But Congress can expressly abrogate state sovereign immunity, and the state itself can

waive it or otherwise consent to suit. *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016).

Here, all Defendants are MDOC officials, so Plaintiff's liberally construed official-capacity claims against them are properly pleaded against the State of Michigan itself. But Michigan has not waived its sovereign immunity. *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (noting states can waive sovereign immunity (1) through legislation, (2) by removing an action from state to federal court, or (3) by appearing without objection and defending a case on the merits). Nor has Congress abrogated it. *Kerchen v. Univ. of Michigan*, 100 F.4th 751, 761 (6th Cir. 2024). So all Defendants are entitled to sovereign immunity from Plaintiff's official capacity claims.

*Ex parte Young* does not alter the analysis. True, the "*Ex parte Young*" exception applies to official capacity claims to the extent they seek purely prospective injunctive relief to halt ongoing violations of federal law. *See Satkowiak v. Marshall,* No. 1:24-CV-11229, 2025 WL 792868, at *4 (E.D. Mich. Mar. 12, 2025). And true, Plaintiff seeks a "purely prospective" injunction "to restrict further First Amendment violations within" WCC. ECF No. 1 at PageID.6. But this is not enough. To allege an "ongoing violation of federal law" sufficient to invoke the *Ex parte Young* exception to Eleventh Amendment sovereign immunity, a plaintiff must allege a sufficiently "imminent and particularized" threat that the state-official defendants will enforce the challenged state policy or statute against the plaintiff in the future. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015). Plaintiff has made no such showing here and has not even attempted to argue that this mail—legal or otherwise—will be improperly "opened" or "redacted" by WCC officials in the future. *See generally* ECF No. 1. As the Sixth Circuit has emphasized, the *Ex parte Young* exception only applies "when there is a realistic possibility that the [state] official

[defendants] will take legal or administrative action against the plaintiff's interests" in the future. *Russell*, 784 F.3d 1037, 1048 (6th Cir. 2015). The scant facts alleged in Plaintiffs' *pro se* Complaint reveal no realistic probability.

### B. First Amendment Freedom of Speech

Turn to Plaintiff's individual-capacity claims. First, Plaintiff alleges that Defendant Ryan violated his First Amendment right to free speech by opening and redacting his IRS documents, which he contends classify as "legal mail." ECF No. 1 at PageID.5. Not so.

"A prisoner's right to receive mail is undoubtedly protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003); *accord Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992); *Turner v. Safley*, 482 U.S. 78, 87 (1987). Indeed, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993). But a prison official violates a prisoner's First Amendment rights by opening and reading incoming mail in an "arbitrary and capricious fashion." *Sallier*, 343 F.3d at 874.

Legal mail receives heightened First Amendment protections "because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* The Sixth Circuit defines "legal mail" as "correspondence from elected officials and government agencies, including the offices of prosecuting officials such as state attorneys general" as well as court correspondence. *Muhammad v. Pitcher*, 35 F.3d 1081, 1083-1084 (6th Cir. 1994)). But "general communications" with such entities and individuals are insufficient—the substance of the correspondence must "implicate the

[prisoner's] right to petition for grievances and the right of access to the courts." *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009); *see also Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (defining legal mail as "materials of a legal nature, which have an impact or import with respect to [their] legal rights and/or matters").

Here, Plaintiff's IRS documents are not "legal mail" entitled to heightened First Amendment protection. Although the documents are from a government agency, none implicate any of Plaintiff's legal rights or regard any legal proceedings. Instead, the documents simply inform Plaintiff of his adjusted return, ECF No. 1 at PageID.10, his pending refund, *id.* at PageID.16, and include other "general communications" from the IRS responding to Plaintiff's unclear requests and inquiries, *id.* at PageID.23–24.[3] *See Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) (finding prisoner's letter to the Secretary of State was not legal mail because, although the letter was addressed to a "public official," the correspondence was "general" and did not "implicate [the plaintiff's] constitutional right of access to the courts").

And even if the IRS documents were "legal mail" entitled to "special handling" at WCC[4] and heightened protection under the First Amendment, Plaintiff's free speech claim still fails.

---

[3] Plaintiff's IRS documents are also not "legal mail" under MDOC Policy, which narrowly defines legal mail as mail "received directly from an attorney or law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, the Office of the Legislative Corrections Ombudsman, a Consulate or Embassy, Disability Rights Michigan (DRM), Michigan Department of Civil Rights (MDCR), or settlement monitors is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above." MDOC Policy Directive 05.03.118(HH) (effective May 5, 2025).

[4] WCC abided by MDOC's "opt-in" legal mail policy, under which a prisoner may request that "their incoming legal mail receive special handling," such that the legal mail cannot be opened without the prisoner's presence, "by submitting a completed Mail Requiring Special Handling form (CSJ-246) to the facility's mailroom supervisor or designee." ECF No. 1 at PageID.27 (citing MDOC Policy Directive 5.03.118(FF) (effective Mar. 1, 2018)). When a prisoner does not opt-in to being present when their legal mail is opened—or when the prisoner receives non-legal mail—MDOC Policy requires officials to open and inspect the mail to determine if it contains contraband

Although Defendant Ryan opened Plaintiff's IRS documents and redacted his social security and taxpayer identification numbers, *see* ECF No. 1 at PageID.10–24, such conduct is reasonably related to WCC's legitimate penological interest to limit prisoner access to personal identification information while confined. *See* MDOC Policy Directive 04.04.120C, Attachment C, Section A(11). (effective May 5, 2025) (prohibiting prisoners from "having access" to their "social security numbers" and any other "personal identification information" unless first approved by the Warden); *see also Sallier*, 343 F.3d at 873 (noting prisons can restrict access to mail if the restriction is "reasonably related to security or other legitimate penological objectives"); *Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[C]hallenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.").

At bottom, Plaintiff's First Amendment freedom-of-speech claim will be dismissed for failure to state a claim.

### C. First Amendment Access to the Courts

The same result for Plaintiff's claim that Defendant Ryan deprived him of his First Amendment right to access the courts. ECF No. 1 at PageID.5. To plead a viable First Amendment

---

or impermissible information. *See Id.* (citing MDOC Policy Directive 05.03.118(DD) (effective Mar. 1, 2018)).

Although such policy is constitutionally permissible, *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir.1992); *Sallier*, 343 F.3d at 874, Plaintiff alleges he opted-into legal mail special handling in 2009. ECF No. 1 at PageID.2. So, if Plaintiff's IRS documents were properly classified as "legal mail"—they are not—Defendant Ryan seemingly violated MDOC Policy by opening the documents outside of Plaintiff's presence. But a violation of MDOC Policy is not automatically a violation of Plaintiff's First Amendment rights as required to plead a plausible § 1983 claim. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010).

"access to the courts" claim, a prisoner plaintiff must expressly allege the "underlying cause of action" they contend that they cannot meaningfully access. *Christopher v. Harbury*, 536 U.S. 403, 404, (2002). Moreover, a plaintiff must "plead and prove prejudice stemming" from the prison official's alleged interference. *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010); *accord Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996); *see also Lewis v. Grider*, 27 F. App'x. 282, 283 (6th Cir.2001) (denying prisoner's claim for interference with access to courts through opening legal mail because prisoner did not allege any "prejudice to any pending litigation"); *Smith-El v. Steward*, 33 F. App'x 714, 717 (6th Cir. 2002) (same).

Here, even assuming the IRS documents Plaintiff alleges Defendant Ryan interfered with are "legal mail," Plaintiff has not alleged these documents related to any legal proceeding, nor has Plaintiff even attempted to show how Defendant Ryan's opening and redacting the documents prejudiced these unidentified proceedings or otherwise "hindered" Plaintiff's ability "to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). So Plaintiff's access-to-the-court claim will be denied. *See Kensu*, 87 F.3d at 175 ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation.").

### D. Grievance Claims

Next, Plaintiff alleges Defendants Mikat, Moriarty, and Schreiber "effectively chilled" his First Amendment right to file grievances and retaliated against his early grievances by rejecting his subsequent grievances. ECF No. 1 at PageID.5. Both claims fail.

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I. Although a prisoner has a First Amendment right to file grievances against prison conditions or officials, *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), the First Amendment does not impose an affirmative obligation on the

government to consider—let alone grant—any relief on a petition for redress of grievances. *Smith v. Arkansas State Hwy. Employees, Local 1315*, 441 U.S. 463, 464-65 (1979); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."). The denial of a grievance does not, without more "chill" a prisoner's ability to file more grievance and does not rise to the level of a First Amendment violation.

Nor does it rise to the level of First Amendment retaliation. To state a retaliation claim, a plaintiff must allege: (1) that he or she engaged in protected conduct, (2) that an adverse action was taken against him which is capable of deterring a person of ordinary firmness from continuing to engage in that conduct, and (3) that the adverse action was motivated by the protected conduct. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Plaintiff engaged in protected conduct by filing grievances against Defendants. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). But Plaintiff has not alleged any adverse action. "If denying a grievance was considered adverse action, every denial would give rise to liability for retaliation under the First Amendment. The grievance would be protected conduct, the denial of the adverse action, and, axiomatically, the denial is motivated by the grievance." *Coleman v. Kent*, No. 2:23-CV-172, 2024 WL 3664569, *5 (W.D. Mich. Aug. 6, 2024). Indeed, denying a grievance or refusing to file one would not deter a person of ordinary firmness from filing another. Numerous federal courts have held similarly. *See, e.g.*, *id.*; *Gonzalez v. Bendt*, 971 F.3d 742, 746 (8th Cir. 2020) (noting an on-the-merits denial of a grievance is a "minor interference with an inmate's access to the administrative remedy process that would not deter an inmate of ordinary firmness from continuing to exercise his First Amendment right to file [more] grievances and then to seek judicial remedies"); *Cameron v. Gurnoe*, No. 2:19-CV-71, 2019 WL 2281333, at *4 (W.D. Mich.

May 29, 2019); *Williams v. KYDOC, et al.*, No. 5:22-CV-P128-JHM, 2023 WL 3613862, *11 (W.D. Ky. May 23, 2023); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009). Thus, Plaintiff fails to state a viable First Amendment retaliation claim.

In sum, all Defendants are entitled to Eleventh Amendment sovereign immunity in their official capacities, and Plaintiff fails to state any viable individual capacity claims. So Plaintiff's *pro se* Complaint will be dismissed in its entirety. And, because this Court concludes that an appeal of this decision cannot be taken in good faith, Plaintiff will be denied the ability to proceed IFP on appeal. *See* 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED.**

Further, it is **ORDERED** that Plaintiff's ability to proceed *in forma* pauperis on appeal is **DENIED.**

**This is a final order and closes the above-captioned case.**

Dated: May 27, 2025                              s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge